Bonnie HUMMEL, Plaintiff–Appellant,

v.

COUNTY OF SAGINAW; Saginaw County Sheriff's Department, Defendants–Appellees.

No. 00–2468.

United States Court of Appeals, Sixth Circuit.

July 18, 2002.

Before KRUPANSKY and BOGGS, Circuit Judges; and HOOD,* District Judge.

PER CURIAM.

Plaintiff–Appellant Bonnie Hummel has challenged the district court's award of summary judgment in her disability rights action to the defendants-appellees County of Saginaw and Saginaw County Sheriff's Department ("Sheriff's Department"). Hummel has contended that she is fully capable of returning to her previous position as a security guard and that the Sheriff's Department violated the Americans with Disabilities Act in failing to accede to her request to return.

From October, 1991 to July 3, 1996, plaintiff-appellant Bonnie Hummel was employed as a Sheriff's Deputy for the Sheriff's Department. Hummel functioned primarily as a building security officer in the Houghton Clinic in Saginaw County. In October, 1994, Hummel informed her supervisor that she had been diagnosed with lung cancer. Hummel continued to work until June 5, 1995, when she was granted a medical leave of absence. At that time, Hummel underwent a resection of the upper lobe of her left lung. One-half of her left lung was removed. Pursuant to the Collective Bargaining Agree-

ment, Hummel was then granted one year of leave. Hummel collected disability payments from June 5, 1995 to June 13, 1996. In the course of her employment, Hummel had accrued personal time-off credits and, at the end of her medical leave, she was remunerated for them as well.

On September 5, 1996, Hummel wrote to her supervisor, requesting reinstatement and offering to reimburse the Sheriff's Department for her personal time-off credits. However, Hummel did not provide the Sheriff's Department with a medical release permitting her to return to work. On September 19, 1996, the Sheriff's Department communicated to Hummel by way of letter that "[u]pon review of the records, it appears that you were separated from County employment on July 3, 1996. That termination was a disability termination per your union contract. Because you were still disabled as of July 3, 1996, the date of your one year disability anniversary, you were no longer eligible for employed status."

Hummel repeated her request in the spring of 1997. On May 9, 1997, the Sheriff's Department wrote to Hummel, informing her that the "County of Saginaw has never received proof of your ability to perform the duties of a Deputy Sheriff." On June 11, 1997, Dr. Malik, a physician whom Hummel consulted for treatment, wrote that Hummel "has been under my care and I have advised her that she may return to work today with no restrictions." Hummel then submitted this statement as her proof that she could return to work. Unwilling to rely on Dr. Malik's simple one-sentence prognosis, the Sheriff's Department sent Hummel's medical records to Dr. David H. Garabant, a physician at the University of Michigan Department of

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Public Health, for analysis. Dr. Garabant concluded that "[t]he tests performed on Ms. Hummel in 1994 indicate that she was not qualified to perform the essential duties of a Building Security Officer in 1994. She had a partial lung resection in 1995 and she showed evidence of further deterioration of pulmonary function in 1997. Neither of these events reasonably could be expected to have improved her physiologic capacity. Based on the medical records I have reviewed, it is my opinion that Ms. Hummel does not have the pulmonary capacity to perform the essential duties of Building Security Officer for Saginaw County." Relying on Dr. Garabant's conclusion, the Sheriff's Department then denied Hummel's request for reinstatement.[1]

On July 15, 1999, Hummel filed a complaint in federal court, charging Saginaw County and the Sheriff's Department with violation of the: (1) Americans with Disabilities Act; (2) Family and Medical Leave Act; and (3) Michigan Persons with Disabilities Civil Rights Act.[2] On September 21, 1999, the Sheriff's Department filed its answer, alleging, among other things, that it had relied on independent medical advice that Hummel could not perform the tasks associated with her former position and that the Sheriff's Department could not accommodate Hummel in restructuring the position.

On June 2, 2000, the County of Saginaw and its Sheriff's Department filed their motion for summary judgment, arguing that the county had a non-discriminatory leave of absence policy and, as such, the defendants had not violated the ADA by terminating Hummel's employment with the Sheriff's Department. On June 22, 2000, Hummel filed her response to the defendants' motion for summary judgment, arguing that even if the policy was non-discriminatory, the defendants had a duty to accommodate her under the ADA. On October 17, 2000, the district court conducted a hearing regarding defendants' motion for summary judgment. On November 16, 2000, the district court concluded that the defendants had no duty to accommodate Hummel because "plaintiff is not qualified to perform the duties of a

---

1. On March 20, 2000, Dr. Garabant examined Hummel. After performing a pulmonary function test, Dr. Garabant concluded that Ms. Hummel's current pulmonary function tests indicate that she has moderate obstructive abnormalities of her airways with air trapping and reduced diffusing capacity. These findings are consistent with her history of cigarette smoking. Her obstructive pulmonary disease interferes with and limits her exercise capacity. Because of her pulmonary impairment, she was unable to exercise beyond a work load of 120 watts. This level of exertion is roughly equivalent to walking 4.5 to 5 miles/hour, gardening, or climbing stairs. The evidence of exercise limitation is also consistent with her recollections of being able to walk without limitations, becoming winded after chasing her grandson, and becoming winded on prolonged stair climbing.

The issue of concern is whether she is able to perform her job duties as an officer at the Saginaw County Sheriff's Department. The job duties include extremely strenuous tasks such as restraining individuals and answering alarms. It is extremely unlikely that she can perform these duties because of her pulmonary impairment. Tasks such as running at 7 miles/hour or faster, and climbing stairs with a 30 pound load would clearly exceed her exercise capacity. While she might be able to perform at these levels for short time periods, she would be unable to sustain these activities for more than a few minutes.

In summary, it is extremely unlikely she can perform the duties required in her position as an officer at the Saginaw County Sheriff's Department.

2. Hummel has not argued that the district court's dismissal of her non-ADA claims was without merit.

building security officer[.]" On December 6, 2000, Hummel timely filed her notice of appeal.

Summary judgment should "be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ezzo's Investments, Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 985 (6th Cir.2001). Courts presented with motions for summary judgment must consider the tendered evidence, and the reasonable inferences therefrom, in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The reviewing court conducts a *de novo* examination of a district court's order awarding summary judgment. *See American Medical Security, Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d 743, 749 (6th Cir.2001).

"The ADA prohibits employment discrimination based on an employee's disability." *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 779 (6th Cir.1998). The ADA provides in part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1994). "To defeat an employer's motion for summary judgment in response to an ADA claim, an employee must first make out a *prima facie* case of discrimination by establishing the following elements: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The burden then shifts to the employer to provide a non-discriminatory explanation for the employment decision. If the employer offers what appears to be a legitimate explanation, the employee then has the burden of showing that the proffered explanation is pretextual." *Cehrs*, 155 F.3d at 779.[1]

---

1. Hummel has argued that the district court improperly considered whether there was "evidence that is sufficient to create a question of fact on what reasonable minds might differ as to whether she was qualified to do the job as building security officer, even with the accommodation of additional leave time to recuperate." Hummel has argued that this was not the proposed basis for dismissal in the defendant's motion for summary judg-

ment, which was that the Collective Bargaining Agreement held the job open for a year and she requested reinstatement beyond that year. The district court did not err in considering this issue because, pursuant to Rule 56 summary judgment practice, after the defendant had met its initial burden of identifying the lack of a genuine issue of material fact, Hummel was required to submit specific evidence as to material facts which would sup-

Hummel has contended that because she was able to work for nine months while suffering from her lung condition before her surgery, she believes that she would be able to return to work after her surgery. Hummel has maintained that she is especially able to determine her own fitness for the position. This contention is unavailing because circumstances have materially changed since her employment with the Sheriff's Department. First, subsequent to that nine-month period, Hummel underwent a resection of her left lung, which reduced her lung capacity by twenty-five per cent. Second, Hummel's former position at the Houghton Clinic has been eliminated and, if Hummel were reinstated, she would serve as a security guard at the county courthouse, a work environment in which Hummel has not yet performed; she would therefore have no special expertise as to its requirements and her ability to satisfy them. Third, Hummel's own sentiments as to being able to perform the work do not raise a genuine issue of fact because she herself has admitted that she could not quickly climb stairs (the county courthouse has four floors) to apprehend suspects.[2]

As further proof of her fitness, Hummel has relied on Dr. Malik's return to work slip. However, as the Sheriff's Department has pointed out, Dr. Malik has admitted to relying on Hummel's self-serving declaration that she could perform the job. Dr. Malik has also indicated that he did not perform any tests which would have indicated that she could return to work. And, most importantly, Dr. Malik has stated that he would defer to a physician who performed the necessary tests, including the pulmonary function test. Dr. Garabant performed the pulmonary function test and concluded that Hummel could not perform the functions of the job.

Hummel has then argued that she could rely on other security officers to perform the tasks she is not able to perform. In so arguing, Hummel is requesting a modification of an essential function of the subject position.[3] This court noted in *Hoskins v.*

---

port submission of her case to the jury. One of the essential elements in her ADA claim was that she could do the job if reinstated. Moreover, Hummel did not file a motion for reconsideration in the district court. In her appeal before this court, Hummel has not alluded to any rationale or piece of evidence which would undermine the district court's judgment and which was not fully considered by the district court in its opinion.

2. Hummel has argued that she would not be called upon to apprehend suspects frequently. But, as this court noted in *Hoskins v. Oakland County*, 227 F.3d 719, 726–27 (6th Cir.2000),

> [a]lthough a deputy one may be required physically to restrain inmates only infrequently, the potential for physical confrontation with inmates exists on a daily basis, and the consequence of failing to require a deputy to perform this function when the occasion arises could be a serious threat to security. *See* 29 C.F.R. pt. 1630, App. § 1630.2(n) ("The consequences of failing to require the employee to perform the

function may be another indicator of whether a particular function is essential. For example, although a firefighter may not regularly have to carry an unconscious adult out of a burning building, the consequence of failing to require the firefighter to be able to perform this function would be serious."); *Brickers*, 145 F.3d at 849–50 ("Although, as Brickers has argued, it may be true that a[ ][bus] attendant [on special education buses transporting handicapped students] seldom, if ever, must perform any lifting, the ability to lift would be crucial in an emergency situation....").

*Id.*

3. The published job description provides a listing of the job duties:

> ESSENTIAL DUTIES AND RESPONSIBILITIES
> • Arrests subjects with weapons or outstanding warrants and transports to County Jail.
> • Answers alarms and disturbance calls within Government Center complex and

*Oakland County*, 227 F.3d 719, 728 (6th Cir.2000), that the ADA does not require an employer to shift difficult tasks to fellow employees:

> Hoskins first contends that she can perform the function of restraining inmates with the assistance of others. She explains that it is OCSD's policy that deputies call for assistance when attempting to restrain an inmate, and she reasons that "[i]f it is department policy that multiple deputies are to be used when attempting to physically restrain an inmate, then it is not unreasonable for Defendants to provide this same accommodation to Plaintiff on a more permanent basis." However, the ADA does not require employers to accommodate individuals by shifting an essential job function onto others. *See, e.g., Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir.1999) ("The only possible accommodation [the plaintiff] identifies is allowing co-workers to perform as much as 20% of the essential automotive mechanic duties for Bratten when he needs such assistance.... Continuing the practice of 'assisting' Bratten in tasks on an *ad hoc* basis may be sound labor relations policy for defendants, as we can imagine that such circumstances could promote employee loyalty and teamwork. However, employers are not required to do so under the ADA."); *see also* 29 C.F.R. pt. 1630, App. § 1630(*o*) ("An employer or other covered entity is not required to reallocate essential functions.").

assists other law enforcement officers when necessary.
WORKING CONDITION/ENVIRONMENT
- May encounter irate or disturbed people ... is subject to possible assaultive behavior and communicative diseases. Some persons have to be physically restrained.

*Id.* Hummel is unable to perform the essential job functions of her former position; the ADA therefore does not require the Sheriff's Department to reinstate her.

For the foregoing reasons, the district court's judgment is AFFIRMED.

QUALIFICATIONS
- Ability to walk, stand, bend, kneel, lift 150 lbs. and restrain violent persons.

