JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant J. Marie Batiste appeals from the trial court's decision to grant summary judgment to her former employer, defendant-appellee the Cuyahoga County Sheriff's Department, on her claims of disability discrimination and wrongful discharge.
 {¶ 2} Appellant argues the trial court improperly awarded judgment to appellee since the evidence demonstrated the existence of genuine issues of material fact with respect to the following matters: whether she could perform the "essential functions" of her job as a corrections officer; whether appellee's past practices prevented it from refusing to continue its accommodation of her disability; and, whether she specifically was required to request an accommodation for the disability before appellee discharged her from employment.
 {¶ 3} This court has reviewed the record, however, and has determined the trial court appropriately granted appellee's motion for summary judgment. Therefore, its decision is affirmed.
 {¶ 4} The record establishes that appellee hired appellant as a corrections officer ("CO") in April 1993. In order to qualify for this position, appellant had to possess some "minimum acceptable characteristics," one of which was the "ability to * * * demonstrate physical fitness."
 {¶ 5} Appellant mainly worked as an "inmate manager," sometimes referred to as a "pod officer," who supervised inmates housed in the county jail. Thus, she ordinarily engaged in controlling and observing inmates, searching their persons and their effects, distributing meals and other approved items to them, and escorting them throughout the premises. Appellant received training in the use of safety and security equipment devices while performing the foregoing duties.
 {¶ 6} As a CO, however, the written "position description" clearly stated that appellant was expected to "perform all functions required of the positions in the * * * areas [of] Inmate Management[,] Information System, Escort Services, Food Services, Safety and Sanitation, Commissary, Access Control, and * * * related duties as assigned." (Emphasis added.) The Collective Bargaining Agreement ("CBA") that governed the employment relationship between COs and appellee provided that assignments would be made "at the discretion of the Employer."
 {¶ 7} The record reflects that in March 2000, appellant received an injury during her shift when a medical cart rolled over her right foot. Her first toe was damaged. Upon her return to work a week later, appellant presented a "disability certificate" from her treating physician, who noted appellant should be placed in a "sitting job" for two weeks.
 {¶ 8} At that point, in accordance with the CBA, appellee placed appellant on duty solely as an "access controller." COs who functioned as access controllers were required to sit in a "control room" and to monitor persons entering into or leaving jail cells. As given to appellant, this duty was characterized in the CBA as an "alternate work placement," i.e., an assignment available for "[a]ny Employee who ha[d] sustained an on-the-job injury while performing his/her routine job duties" and who sought to return to work.
 {¶ 9} Pursuant to the CBA, upon placement of appellant into an "alternate work" assignment, appellee could request medical documentation if, inter alia, it had concerns about the extent of the injury or the duration of the alternate work assignment. Furthermore, in order to determine whether an employee was "permitted to work," appellee could require appellant to "submit to a medical examination * * * to assess whether * * * the Employee can perform the essential functions of h[er] regular job * * *."
 {¶ 10} The record reflects that, as a result of regular written medical requests for "light duty," appellant enjoyed her alternate work placement for a period of over two years. In August 2002, appellant had foot surgery, and her doctor provided to her a written work request that she be "allow[ed] * * * to do light duty until 8/1/03." However, in May 2003, appellant's treating physician issued a written notification to appellee which indicated that the injury to appellant's foot was "permanent."
 {¶ 11} Appellee thereupon requested appellant pursuant to the CBA to submit to an independent medical evaluation. On July 9, 2003 appellee received that doctor's evaluation. The doctor concurred in the diagnosis already made that appellant had lost the ability to move a portion of her right foot. In his opinion, although appellant was "able to walk and get around with minimal difficulties," she was not able to "run or climb stairs" as is occasionally required of someone in the CO position and thus, she "would [be] limit[ed in] her ability to respond in extreme situations." Based upon this assessment, the doctor concluded appellant was not "fit for duty as a corrections officer."
 {¶ 12} Appellee thereupon notified appellant pursuant to OAC 123:1-33-02(C) that it would conduct a hearing on the matter of whether appellant should be "separated" from employment due to "involuntary disability." That administrative code section permits an "appointing authority" to hold a proceeding at which it can determine whether its employee is "incapable of performing the essential job duties" of the position for which he or she was hired.
 {¶ 13} The hearing took place on July 25, 2003, and was conducted by Christopher J. Russ, appellee's Employee Relations Administrator. After receiving the evidence and the testimony, Russ concluded that while the evidence demonstrated appellant "could continue to perform the duties of a control room assignment, she [was] incapable of performing the duties of a corrections officer * * * in * * * jail pods."
 {¶ 14} Since assignment to a control room was "only one part of a larger set of `essential job duties' of a C.O.," Russ recommended that an involuntary disability separation order issue to appellant. Appellant received the order on August 6, 2003. Her final paycheck was issued on August 15, 2003.
 {¶ 15} On October 10, 2003 appellant filed the instant case in the Cuyahoga County Court of Common Pleas, alleging causes of action against appellee of employment discrimination and wrongful discharge. Appellant alleged appellee's actions violated R.C. 4112.01 et seq., Ohio's version of the Americans with Disabilities Act ("ADA").
 {¶ 16} Following discovery, appellee filed a motion for summary judgment with respect to appellant's claims. The motion was supported by Russ' affidavit, along with copies of relevant documents and portions of appellant's deposition testimony. Appellant filed a brief in opposition to the motion, to which she attached additional evidentiary material. Ultimately, the trial court issued an order that granted appellee's motion.
 {¶ 17} The trial court decided summary judgment for appellee was warranted because "the evidence show[ed appellant was] unable to perform the essential duties of the corrections officer position," and, further, that "permanent assignment to the control room * * * was not a reasonable accommodation," since it was neither an actual position nor the position for which she had been hired. The trial court additionally stated that appellant never formally requested accommodation.
 {¶ 18} Appellant appeals the trial court's decision with the following two assignments of error:
 {¶ 19} "I. The trial court erred in granting summary judgment on Plaintiff's disability discrimination claims because there were genuine fact issues as to whether Plaintiff could perform the `essential functions' of her job and whether assigning Plaintiff to a control room was a reasonable accommodation given Defendant's past employment practices.
 {¶ 20} "II. The trial court erred in granting summary judgment on Plaintiff's disability discrimination claim because there were genuine fact issues as to whether Defendant knew (or was on notice) that Plaintiff needed a reasonable accommodation even if she had not `formally' requested one."
 {¶ 21} In her first assignment of error, appellant argues summary judgment was inappropriate for the reason that the evidence raised questions concerning elements of her disability discrimination claim, viz., whether she was a "qualified individual," and whether appellee was required to continue the "accommodation" it made for her "disability." Appellant's argument is unpersuasive.
 {¶ 22} In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *." Aglinsky v. Cleveland Bldrs. Supply Co. (1990),68 Ohio App.3d 810.
 {¶ 23} When a court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial. Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. The nonmoving party may not rely merely on the allegations of the complaint. Dresher v.Burt, supra.
 {¶ 24} Appellant brought her claim against appellee pursuant to R.C.4112.01 et seq. R.C. 4112.02(A) provides that it "shall be an unlawful discriminatory practice * * * for any employer, because of the * * * disability * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to * * * any matter directly or indirectly related to employment."
 {¶ 25} Ohio's disability discrimination statutes are interpreted by reference to federal law. Columbus Civ. Serv. Comm. v. McGlone,82 Ohio St.3d 569, 573, 1998-Ohio-410. Thus, appellant could establish a prima facie case of discrimination by demonstrating the following: 1) she had a "disability" within the meaning of the ADA; 2) she is a "qualified individual" under the ADA; and, 3) she suffered an adverse employment action as a result of the disability. Partlow v. Blue Coral-Slick 50,
Cuyahoga App. No. 85437, 2005-Ohio-3849, ¶ 18. In this case, the evidence demonstrated appellant could not prove the elements of her claim of disability discrimination.
 {¶ 26} "Disability" is defined as a physical or mental impairment that "substantially limits" one of the major life activities, including the function of walking. A "substantial limitation" is one which significantly restricts the person in performing that life activity as compared with an "average person in the general population." Maracz v.United Parcel Service, Inc., Cuyahoga App. No. 83432, 2004-Ohio-6851. "[A]n individual is considered to be substantially limited in the major life activity of walking when the individual's ability to walk is so restricted that it substantially affects all areas of his or her life." Id., at ¶ 39.
 {¶ 27} Although McGlone, supra, suggests otherwise, construing the evidence most strongly in appellant's favor, this court will assume, without deciding, that appellant's foot condition constituted a "substantial impairment." Nevertheless, appellant could not establish the second element of her claim.
 {¶ 28} A "qualified individual" is one who can both "meet the necessary prerequisites for the particular job," and also who is "able to perform the essential job functions," with or without reasonable accommodation. Maracz, supra at ¶ 52. Appellant argues strenuously that she was a "qualified individual." She is incorrect.
 {¶ 29} The job description of a CO stated that one of the prerequisites for the position was the ability to demonstrate physical fitness. This was necessary because a CO was expected to perform "all functions required" of the several areas to which he or she would be rotated. Hoskins v. Oakland Cty. Sheriff's Dep't. (6th Cir. 2000),227 F.3d 719. Appellant admitted in her deposition testimony that due to her injury, she was unable to perform all the functions required of a CO.
 {¶ 30} Similarly, appellant's assertion that the evidence did not establish "being able to serve as a pod officer" is an "essential job function" of a CO is belied by the record. "Access Control" was not listed on the job description as a separate position, but, rather, as only a part of her overall duties. She received that assignment only after her injury.
 {¶ 31} In Russ's affidavit, he stated that the access control room was considered "a specialty post" under the CBA, and was used as a "relief" duty area that potentially was available by rotation to all COs. His statement was supported by both the deposition testimony of jail administrator Kenneth Kocevar, and the CBA.
 {¶ 32} Kocevar testified that COs rotated into the control rooms for "a number of reasons," including injuries, and thus could be placed there for "an indefinite period of time." He gave examples for the practice of duty rotation; rotations between all of the duty areas were made to "find a level of employee satisfaction," or to "help the officers adjust to the job," or when other COs were out sick. Furthermore, a CO had to be flexible because "on any given day people are subject to being juggled around to certain positions." Hummel v. Cty. of Saginaw (6th Cir. 2002), 40 Fed. Appx. 965.
 {¶ 33} The CBA's terms indicated that the position to which appellant was assigned after her injury was an "alternative work placement." Such an assignment was for an employee who received an on-the-job-injury but who wanted eventually to return to his or her full duties. The CBA clearly intended alternative work placements to be temporary in nature; otherwise, workers who remained in "light duty" would occupy the positions needed by workers who had been newly injured. McDonald v. KansasDept. of Corr. (D.Kan. 1995), 880 F.Supp. 1416; cf., Kiphart v. SaturnCorp. (6th Cir., 2001), 251 F.3d 573.
 {¶ 34} Therefore, appellant was not a "qualified individual" who could perform the essential functions of her position with or without accommodation. Columbus Civ. Serv. Comm. v. McGlone, supra; Hoskins v.Oakland Cty. Sheriff's Dep't., supra. Moreover, R.C. 4112.01 et seq. did not require appellee to continue the practice of shifting essential job functions from appellant in order to make her assignment permanent.Hummel v. Cty. of Saginaw, supra.
 {¶ 35} Since the evidence demonstrated appellant could not establish the elements of her claim of disability discrimination, the trial court did not err in granting appellee's motion for summary judgment. Torresv. Cleveland (July 1, 1999), Cuyahoga App. No. 75365.
 {¶ 36} Appellant's first assignment of error, accordingly, is overruled.
 {¶ 37} In view of the foregoing, appellant's second assignment of error is moot. App.R. 12(A)(1)(c).
 {¶ 38} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Kilbane, J. concur.