Sandra LOCKARD, Plaintiff,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

No. 4:99CV0786.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 16, 2001.

Brent L. English, Law Offices of Brent L. English, John F. King, King & Associates, Cleveland, OH, Janet Ileen Stich, Akron, OH, for Plaintiff.

Sandra Lockard, Niles, OH, Pro se.

Robert S. Walker, Jones, Day, Reavis & Pogue, David E. Roloff, Morris I. Hawk, Chattman, Gaines & Stern, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the respective Motions of the Defendants, General Motors Corporation ("GM") and United Automobile, Aerospace and Agricultural Implement Workers Union, Local 1112 ("UAW") for summary judgment (ECF–Dkt.# 40 & # 47). The Plaintiff, Sandra Lockard ("Lockard"), has alleged in Counts I and II that GM has discriminated against her on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Ohio Revised Code § 4112.02. Additionally, in Count III, the Plaintiff has claimed that GM has discriminated against her on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

The Plaintiff also has alleged in Counts V and VI that the UAW has discriminated against her on the basis of disability in violation of the ADA, and R.C. § 4112.02. Furthermore, in Counts VII and VIII, the Plaintiff has claimed that the UAW has discriminated against her on the basis of her sex in violation of Title VII and R.C. § 4112.02.

GM and the UAW have moved for summary judgment with respect to all of the above-stated claims.

For the following reasons, the respective Motions for Summary Judgment of GM

and the UAW (ECF–Dkt.# 40 & # 47) are **GRANTED.**

## FACTS

Unless otherwise noted, the following facts are undisputed. The Plaintiff has been employed by GM at the Lordstown Assembly Plan ("Assembly Plant") and has been a member of the UAW since 1981. After suffering a work-related injury, the Plaintiff was on workers' compensation leave for approximately eight years—from October 1981, to April 1989. Upon her return to the Assembly Plant, the Plaintiff worked various positions on the production line until she sustained another work-related injury in December 1990.

From December 1990, until August 1992, the Plaintiff was not consistently working at the Assembly Plant. During this time, the Plaintiff was either on leave of absence or was placed in short-term temporary positions through the Transitional Work Program ("TWP") at the Assembly Plant. The TWP works in conjunction with the ADAPT process which facilitates the placement of workers returning from leaves of absence into temporary light-duty assignments to reacquaint them with the routine of working in the Assembly Plant. The objective of the ADAPT process itself is to ultimately locate a job which meets the employee's medical restrictions and seniority under the local and national collective bargaining agreement ("CBA").[1] Under the CBA, a returning worker may only displace a less senior worker holding a position which matches the returning worker's medical restrictions, unless the UAW agrees to an exception allowing the displacement of an employee with greater seniority. (*See* App. to GM's Mot. for Summ.J., Exs. D & E.) The UAW has represented that is has not entered into such an agreement with GM at the Assembly Plant. (Basso Dep. at 45–6.)

The Plaintiff returned to full-time work in August 1992, when GM offered her the Left Seat Track Cover position. The ADAPT committee and Dr. Gordon selected that position because Dr. Gordon believed the job fit the Plaintiff's medical restrictions. Further, the committee concluded that the Plaintiff possessed sufficient seniority to hold the position. The Plaintiff, however, claimed that she could not perform the Left Seat Track Cover position because of her physical limitations and was assigned temporarily as a driver, a "tape puller" on the fender cover removal job, and a sweeper. The UAW asserts that the Plaintiff did not have enough seniority to hold any of these positions as a full-time employee.

Subsequently, the Plaintiff filed a grievance setting forth her claim under Paragraph 43(b) of the CBA which provides for a determination by an independent medical examiner whether an employee can perform a specific job. The independent medical examiner must review the requirements of the grievant's job, and then determine whether she can safely perform that job within her restrictions. The independent medical examiner does not make any assessment or diagnosis of the grievant's condition.

In the Plaintiff's case, she was examined by Dr. Daniel Dorfman ("Dorfman") in April 1993. Dr. Dorfman concluded that the Plaintiff could perform the Left Seat Track Cover job consistent with her physical limitations. However, the Plaintiff refused to perform the Left Seat Track Cover job, asserting that it exceeded her physical limitations. In January 1994, the Plaintiff was placed in the "sniffer" job which was within her seniority and her medical restrictions. The sniffer job required the Plaintiff to detect leaks in the air conditioning units of automobiles on the line. The Plaintiff was given an elec-

---

1. An ADAPT committee exists to carry out this objective. It is comprised of members of the UAW and management, and includes the As-

sembly Plant's Medical Director—Dr. Brian Gordon ("Dr.Gordon").

tric screwdriver instead of an air gun to accommodate her medical restrictions. The Plaintiff performed this job for several months, but returned to sick leave. The Plaintiff claimed that her foreman harassed her by placing the screwdriver in his locker at the end of her shift rather than letting her keep it in her own locker. After approximately one month of leave, the Plaintiff returned to the sniffer job only to leave for the same reasons in June 1994.[2]

In September 1994, the Plaintiff's leave of absence was converted from workers' compensation leave to extended disability leave. The Plaintiff remained on extended disability leave throughout 1994, and remained unassigned until March 1996. In March 1996, GM, through the ADAPT committee, placed the Plaintiff in the full-time Right Tail Light Secure job after informing her of its conclusion that the job fit both her medical restrictions and her seniority. During her deposition, the Plaintiff could not identify any other job at the Assembly Plant which satisfied both her medical restrictions and her seniority. (Lockard Dep. at 405–12.)

The Plaintiff held the Right Tail Light Secure job for approximately five months until August 17, 1996. At that time, the Plaintiff claimed that she could no longer perform the Right Tail Light Secure job because the work exceeded her medical restrictions. After leaving the Right Tail Light Secure position, the Plaintiff was subsequently placed on an extended leave of absence. During her leave of absence, the Plaintiff was examined by Dr. Edward J. Novosel, and a report was prepared which describes the Plaintiff's physical limitations. Dr. Novosel opined that the Plaintiff was "physically able to return to work" in the TWP as of February 10, 1997, under the following restrictions: no lifting greater than five pounds with the left hand; no lifting greater than two pounds

with the right hand; no repetitive pushing and pulling greater than two pounds with the right upper extremity; limit excessive extremes of right wrist flexion and extension; patient should avoid using any type of vibrating tools with the right upper extremity; no repetitive movement of the right upper extremity, including pushing, pulling, and twisting; no overhead lifting, pushing, pulling, or reaching. (App. to GM's Mot. for Summ.J., Ex. G.) These findings are consistent with the findings made by Dr. Dorfman on April 5, 1993. (App. to GM's Mot. for Summ.J., Ex. F.) Dr. Novosel requested that the Plaintiff continue working in the TWP until a "regular job" that fit her medical restrictions became available. (Id.) However, when GM subsequently attempted to reassign the Plaintiff to the Right Tail Light Secure job, she refused. The ADAPT committee originally placed the Plaintiff in that job because it was consistent with the April 1993, findings of Dr. Dorfman. (See App. to GM's Mot. to Summ.J., Exs. F & G.)

Upon returning to work in August 1997, the Plaintiff asserted that she could not perform the Right Tail Light Secure job within her restrictions. She then sought the assistance of her UAW Local Committeemen Mike Dando ("Dando") and Drew Balach ("Balach"), and UAW Local Shop Chairman, Al Alli ("Alli"), in obtaining a position within her restrictions. The UAW recommended that the Plaintiff file another Paragraph 43(b) grievance, but she refused, believing that she could rely upon the 1993 determination made by Dr. Dorfman. When the Plaintiff refused to submit to another Paragraph 43(b) evaluation, she was again placed on sick leave.

On September 29, 1997, the Plaintiff received a letter from GM stating that she would lose her seniority pursuant to Paragraph 111 of the CBA if she did not return to work within three days. The Plaintiff returned to the Assembly Plant with her

---

**2.** The Plaintiff asserted a harassment claim in this lawsuit which this Court dismissed. (See Dkt.# 24.)

husband, also a bargaining unit employee, Dando and Balach. The group met with Frank Marshino ("Marshino"), a management employee in Labor Relations. Marshino asked the Plaintiff's husband to leave the room, and when he refused, Marshino ended the meeting. The Plaintiff was subsequently discharged.

After the Plaintiff was discharged, she again asked the UAW for help. The UAW agreed to file a grievance on behalf of the Plaintiff which asserted that GM had violated Paragraph 111 of the CBA by discharging her. The Plaintiff tore this grievance up and asked for grievances to be filed under Paragraphs 6A, 72, and 108 of the CBA. The UAW prepared three grievances. The Plaintiff refused to sign the grievance setting forth her claim under Paragraph 111. The Plaintiff signed two other grievances under protest when the UAW would not append to them a fact statement which she had prepared. The UAW eventually obtained the Plaintiff's reinstatement through processing of the grievance which alleged a violation of Paragraph 111 of the CBA. Notwithstanding her reinstatement, the Plaintiff is currently on sick leave.

## ANALYSIS

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

### A. Disability Discrimination Claims[3]

"The ADA prohibits covered employers from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

---

**3.** The Court's decision on the Plaintiff's ADA claim is also dispositive of here claim of disability discrimination under R.C. § 4112.02. *See City of Columbus Civil Service Commission v. McGlone*, 697 N.E.2d 204, 206–207, 82 Ohio St.3d 569 (1998) ("The federal Americans with Disabilities Act [ ] is similar to the Ohio handicap discrimination law. [ ] We can look to regulations and cases interpreting the Act for guidance in our interpretation of Ohio law.") The Ohio Supreme Court has also held that Federal case law is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *See Little Forest Medical Center v. Ohio Civil Rights Comm.*, 575 N.E.2d 1164, 1167, 61 Ohio St.3d 607 (1991) (*citing State ex rel. Republic Steel v. Ohio Civil Rights Commission*, 44 Ohio St.2d 178, 339 N.E.2d 658 (1975); *Weiner v. Cuyahoga Community College District*, 19 Ohio St.2d 35, 249 N.E.2d 907 (1969)).

other terms, conditions, and privileges of employment.'" *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719 (6th Cir. 2000) (*quoting* 42 U.S.C. § 12112(a)). An employer may discriminate against a person with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In the case *sub judice*, the Plaintiff claims that GM failed to reasonably accommodate her physical limitations and discharged her because of those limitations. In the absence of direct evidence of discrimination, a plaintiff must prove that

(1) he or she is disabled;

(2) is otherwise qualified for the job, with or without 'reasonable' accommodation;

(3) suffered an adverse employment decision;

(4) the employer knew or had reason to know of his or her disability; and

(5) after rejection or termination the position remained open, or the disabled individual was replaced.

*Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "Proof of these five facts, in the absence of an explanation by the employer, creates a mandatory inference that the employer intentionally discriminated against the disabled individual by taking an adverse employment action 'solely' because of his or her handicap." *Id.* If, however, the employer provides a legiti-

mate non-discriminatory reason for its adverse employment action against the plaintiff, "the plaintiff will bear the burden of establishing that the proffered reason is a pretext for unlawful discrimination." *Id.* at 1185–86. Under this framework, the burden of persuasion remains with the plaintiff at all times. *See id.* at 1186–87 (*citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### 1. Determination of Disability

This Court must determine, as a threshold matter, whether the Plaintiff is disabled under the ADA. The ADA defines disability as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. 12102(2). "The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). The regulations additionally provide factors to consider in determining whether a person meets the definition: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

The Defendant argues that this case is factually similar to *McKay v. Toyota Motor Mfg., USA, Inc.*, 110 F.3d 369, 371 (6th

Cir.1997). In *McKay*, the plaintiff was restricted in her ability to lift, use vibrating tools, and repetitively use her right hand in connection with work on the assembly line at a Toyota plant in the body-weld division, and subsequently in the plastics department. *See McKay*, 110 F.3d at 370–71. The Sixth Circuit affirmed the finding of the district court that the plaintiff was not substantially limited. The district court reasoned as follows:

> At the time of her termination from [Toyota], McKay was a 24 year old college graduate, working on earning her teaching certificate. Given her educational background and age, she is qualified for numerous positions 'not utilizing' the skills she learned as an automobile assembler. Merely because she can no longer perform repetitive factory work does not render her significantly limited under the ADA.... McKay has not established that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes as compared to similarly-situated persons with comparable training, skills, and abilities. Therefore, she is not substantially limited in the major life activity of working.

*McKay v. Toyota Motor Mfg., USA, Inc.*, 878 F.Supp. 1012, 1015 (E.D.Ky.1995) (*as quoted in McKay*, 110 F.3d at 371.) The Sixth Circuit concluded that based on the record before it the plaintiff was only precluded from performing "repetitive-motion factory work." *Id.* at 373. Further, the court reasoned that "[p]laintiff's condition does not significantly restrict her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* (*citing* 878 F.Supp. at 1015). Rather, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Id.* (*quoting Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995)).

After the Sixth Circuit decided *McKay*, the Supreme Court decided *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The Supreme Court explained that "[t]he definition of disability [ ] requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.'" *Sutton*, 119 S.Ct. at 2147, 119 S.Ct. 2139 (*quoting* 42 U.S.C. § 12102(2)). Further, and most importantly, the Court concluded that "whether a person has a disability under the ADA is an *individualized inquiry*." *Id.* (Emphasis added.) The Sixth Circuit in *Burns v. Coca–Cola Enterprises, Inc.*, 222 F.3d 247 (2000), followed this conclusion, reasoning that because *Sutton* requires an individualized inquiry into whether an individual has a disability under the ADA, "physical limitations that would not substantially limit one person's ability to work could substantially limit another's depending on each person's occupation and range of qualifications." *Id.* at 253. The court explained that "the district court found that Burns, unlike the plaintiff in *McKay*, was limited by his age, education, and experience to performing jobs that involve medium to heavy lifting and other forms of manual labor." *Id. See McKay*, 110 F.3d at 373. The Sixth Circuit ultimately held that "[g]iven that the determination of whether a claimant is disabled is made on an individual basis, and that the court may consider the manner in which a claimant's personal education and prior work experience limits his ability to pursue employment in other sectors of the economy, the district court's conclusion that Burns is disabled was reasonable and does not conflict with decisions by this and other circuits that similar ... restrictions do not render claimants 'disabled' under the ADA." *Burns*, 222 F.3d at 254. This Court, therefore, must perform an individualized inquiry to determine whether the Plaintiff is disabled under the ADA.

The case *sub judice* is distinguishable from *McKay* and similar to *Burns*. The evidence in this case shows that the Plaintiff has significant physical limitations which prevent her from lifting greater than five pounds with the left hand; lifting greater than two pounds with the right hand; repetitive pushing and pulling greater than two pounds with the right upper extremity; excessive flexion and extension to extremes of the right wrist; using any type of vibrating tools with the right upper extremity; repetitive movement of the right upper extremity, including pushing, pulling, and twisting; overhead lifting, pushing, pulling, or reaching. Furthermore, the Plaintiff is a 46 year old woman, weighing between 140 and 160 pounds, and standing 4′11″ tall. The Plaintiff did not graduate from high school, but rather received her General Equivalency Degree. Furthermore, the Plaintiff has been employed by GM for nearly twenty years, and has relatively little relevant prior work experience. The Plaintiff has held several positions at the Assembly Plant, including positions in the Underbody Department, at Left Seat Track Cover, and Right Tail Light Secure, among other temporary light duty assignments. Automobile assembly is the only type of work for which the Plaintiff has any kind of formal training. It is also the only type of work which she. has performed in the last twenty years.

Based on the foregoing evidence, this Court finds that the Plaintiff is limited by her age, education, and experience to performing manual labor jobs. Additionally, the Court concludes that the Plaintiff's physical limitations prevent her from performing most manual labor automobile manufacturing jobs previously available to her. Therefore, the Plaintiff is substantially limited in the major life activity of working, and is disabled under the ADA. Accordingly, the Plaintiff has satisfied the first element of her prima facie case.

### 2. Plaintiff's Qualifications With or Without Accommodation

The Plaintiff must show that she is "otherwise qualified" for an available position at the Assembly Plant·with or without an accommodation. The Plaintiff must establish "(1) that [s]he 'satisfies the prerequisites for the position . . ., such as possessing the appropriate educational background, employment experience, [and] skills . . .'; and (2) that [s]he 'can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Burns v. Coca–Cola Enterprises, Inc.,* 222 F.3d 247, 256 (6th Cir. 2000) (*quoting Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 676 (7th Cir.1998)). *See also* 29 C.F.R. 1630.2(m). In *Dalton,* the Seventh Circuit further reasoned that "[a]s a practical matter, the employer is entitled to define the job, in terms of both its essential scope and the qualifications required for it; the employer must then decide whether the employee meets those criteria." 141 F.3d at 676. One of the qualifications for positions at the Assembly Plant, whose unionized employees are governed by their CBA with GM, is seniority.[4]

---

**4.** Paragraph 72 of the November 2, 1996, CBA between GM and the UAW states: "Employees who have been incapacitated at their regular work by injury or compensable occupational disease while employed by [GM], will be employed in other work on jobs that are operating in the plant which they can do without regard to any seniority provisions of this Agreement, *except that such employees may not displace employees with longer seniority. . . .* " (Emphasis added.)

Additionally, Wayne Vidovich, Employee Relations Manager at the Assembly Plant, explained that "If someone comes back to work with restriction, at that point, Dr. Gordon reviews the restrictions and reviews . . . the disability that they have or the injury that they have, then jointly with the UAW they go to where the employee's last department was that they worked and . . . start at the bottom of the seniority list in that department on that shift and they . . . try to match a job with the restrictions in line with her seniority." Vidovich Dep. at 21–22.

█ The primary issue, then, is whether the Plaintiff possessed sufficient seniority to hold any of the positions for which she claims she was qualified. Although employers must reasonably accommodate disabled employees, the ADA does not require employers to "[create] a new job, [move] another employee, [promote] the disabled employee, or [violate] another employee's rights under a collective bargaining agreement." *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998) (emphasis added). Consequently, GM and the UAW are not required violate the CBA by ignoring or accommodating the Plaintiff's seniority, or lack thereof, in order to facilitate her placement in a position suited to her physical limitations.[5] During her deposition, the Plaintiff could not identify, and has not since identified, any positions at the Assembly Plant which met *both* her seniority level *and* physical limitations.[6] (Lockard Dep. at 405–12.) Absent any evidence that the Plaintiff possessed sufficient seniority to obtain available positions which also matched her physical limitations, the Court finds that the Plaintiff was not otherwise qualified for those positions under the ADA.

█ Even assuming that the Plaintiff possessed sufficient seniority to qualify for an available position, the Plaintiff was required to request an accommodation. In *Burns*, the Sixth Circuit held that where a plaintiff fails to establish that she requested and was denied reassignment to a position for which she was otherwise qualified, or alternatively, requested assistance in identifying jobs for which she was otherwise qualified and was denied such assistance, she cannot establish a prima facie case of disability discrimination under the ADA.[7] *See Burns*, 222 F.3d at 258, 259 and n. 7 (*citing* cases). *See also Hoskins*, 227 F.3d at 728. Absent such a request, the Plaintiff cannot establish a prima facie

5. The Plaintiff has conceded this point. (*See* Pl.'s Resp. to GM's Mot. for Summ.J. at 15.)

6. Although the Plaintiff has offered the affidavits of her co-workers, Carol Goricki and Darrell Clay, in support of her disability claim, none of them raises a genuine issue of material fact. The first Goricki Affidavit, filed on September 1, 2000, merely contains unsupported assertions that jobs were available that met the Plaintiff's medical restrictions. Goricki failed to account for the Plaintiff's seniority. Goricki, however, attempted to remedy her failure to discuss seniority in a supplemental affidavit filed with the Plaintiff's Response to the UAW's summary judgment motion. Goricki's supplemental affidavit contains unsupported assertions that other disabled employees at the Assembly Plant were placed in positions regardless of their seniority. Goricki did not identify the employees, the positions in which they were placed, their physical limitations, their seniority, and their individual circumstances. The Court has considered the Goricki affidavits, taken the statements contained therein as true, and concludes that they do not raise any genuine issue of material fact with respect to the Plaintiff's disability claim. Moreover, the Court will not accept the interpretations of the CBA offered by Goricki in her affidavits.

The Clay Affidavit suffers from the same deficiencies as the Goricki Affidavit and also fails to raise a genuine issue of material fact with respect to her disability claim.

7. The Plaintiff argues that she was qualified by her seniority for the "sniffer" position which she performed consistent with her physical limitations, but left because of alleged sexual harassment. Assuming that the sniffer position was within the Plaintiff's seniority and physical limitations, she was not entitled to receive that position merely because she wanted it as an accommodation. *See Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–801 (6th Cir.1996).

Recall that the Plaintiff received the Right Tail Light Secure job through the ADAPT process which was triggered by her Paragraph 43(b) grievance. The Paragraph 43(b) grievance which landed the Plaintiff her Right Tail Light Secure job was filed when the Plaintiff was working the Left Seat Track Cover job. Thus, the Right Tail Light Secure job was an accommodation provided to her when her physical.limitations prevented her from performing the Left Seat Track Cover job. Therefore, once the Plaintiff was placed in the Right Tail Light Secure job, she was required to file another grievance under Paragraph 43(b) if the job did not match her physical limitations.

case of disability discrimination.[8]

The Plaintiff has not shown that she requested any reasonable accommodation from GM or the UAW after leaving the Right Tail Light Secure position. At the Assembly Plant, employees are required to request an accommodation according to the procedure set forth in Paragraph 43(b) of the CBA.[9] Despite the Plaintiff's difficulties performing the Right Tail Light Secure job because of her physical limitations, she failed to file a Paragraph 43(b) grievance as provided in the CBA.[10] The following excerpt from the Plaintiff's deposition underscores her unwillingness to follow the proper procedure in obtaining an accommodation:

Q: You were told by a committeeman or an alternate committeeman that management had the right to update or request an update of a Paragraph 43 examination, weren't you?

A: Yes.

Q: But you didn't agree with that?

A: I didn't agree with that.

Q: Why don't you agree with that if your own union is telling you that management is permitted to ask for updated 43(b) information, why do you think that's not the case?

A: A 43(b) is final and binding. I went through one 43(b). I didn't feel the need to go through another.

Q: Let's come back to my question. Just so I am clear, your union is telling you that it is appropriate under the agreement for management to update a 43(b) and you disagree with that.

Now, is there any basis other than your feeling that it's final and binding and it only ever happens once, is there any other basis for your belief that you don't have to undergo an additional 43(b) exam?

A: That's my belief.

Q: And that's the only basis?

A: Yes.

(Lockard Dep. at 372–73.)

Despite her undisputed deposition testimony, the Plaintiff vaguely contends in her Response that she was qualified for positions that matched her seniority to which GM or the UAW could have transferred or reassigned her as an accommodation of her physical limitations.[11] Absent a Paragraph 43(b) grievance, however, GM was without authority to transfer or reassign her consistent with its obligations under the CBA. Therefore, GM could not accommodate the

---

**8.** The Plaintiff asserts that there were several hundred positions at the Assembly Plant which the UAW was able to fill in its discretion. The Plaintiff has not produced any evidence that she ever requested such an accommodation from the UAW.

Furthermore, as discussed *infra*, in failing to pursue her remedies under Paragraph 43(b), the Plaintiff precluded the UAW from working to facilitate her placement in a position that suited her physical limitations and seniority.

**9.** Paragraph 43(b)(1) of the CBA provides:

Any grievance involving a dispute regarding an employee's job assignment which has resulted in a loss of work ..., or a refusal of Management to return an employee from sick leave of absence by reason of the medical findings of a physician or physicians acting for the Corporation, will be initiated ... if such findings are in conflict with the findings of the employee's personal physi-

cian with respect to whether the employee is able to do a job to which the employee is entitled, in line with the employee's seniority, or do the disputed job assignment as the case may be. Failing to resolve the question, the parties may refer the employee to a local clinic or physician mutually agreed upon for an impartial medical opinion as to whether the employee is or is not able to do a job to which the employee is entitled, in line with the employee's seniority, or do the disputed assignment as the case may be.

**10.** As set forth above, the law is clear that an employer is not required to violate the terms of a collective bargaining agreement in order to accommodate a disabled employee. *See Cassidy*, 138 F.3d at 634. The Plaintiff, therefore, cannot successfully argue that GM was required to give her consideration, absent a Paragraph 43(b) grievance, which would result in a violation of the CBA.

**11.** *See* note 6, *supra*.

Plaintiff because she failed to trigger the appropriate mechanism for placing a worker with physical limitations in another position.

Additionally, the Plaintiff has not produced any evidence that the UAW failed to facilitate her placement in a position consistent with her physical limitations and seniority. During her deposition the Plaintiff identified positions which she believed she could physically perform, but was entirely unable to state whether she possessed sufficient seniority to hold those positions. (See Lockard Dep. at 294–97; 405–12.) The Plaintiff has not produced any other evidence supporting her assertion.[12] Consequently, in the absence of any evidence that she possessed sufficient seniority to hold any position which fit her physical limitations, the Plaintiff was not "otherwise qualified" and cannot recover under the ADA. Accordingly, the Plaintiff's failure to request an accommodation, as required by the ADA and the provisions of the CBA, precludes her from claiming that either defendant violated the ADA by not providing one. See Burns, 222 F.3d at 258–59.

Based upon the foregoing, the Plaintiff cannot establish the second element of her prima facie case under the ADA. Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's claims under the ADA and Ohio Civil Rights Act for disability discrimination.

### B. Promissory Estoppel

The Plaintiff claims that she was entitled to be placed in a position as a driver pursuant to a "binding contract" entered into with the UAW, and/or GM, in 1991. This contract supposedly resolved a sexual harassment claim made by the Plaintiff. On August 19, 1999, the Plaintiff voluntarily dismissed her promissory estoppel

12. See note 6, supra.

13. The Court's reasoning and conclusions with respect to the Plaintiff's Title VII claims

claim. As the claim is no longer pending, the Court need not consider it.

### C. Sex Discrimination Claims[13]

The Plaintiff claims that GM and the UAW have discriminated against her based on her sex, alleging that she was constructively discharged by GM while male employees with disabilities were retained, and that similarly situated male employees were treated more favorably by the UAW. In the absence of direct evidence of sex discrimination, the Court applies the analytical framework contained in McDonnell Douglas Corp. v. Green, supra. Under the McDonnell Douglas framework, the Plaintiff bears the burden of establishing, by a preponderance of the evidence, a prima facie case, by demonstrating:

(1) membership in the protected class;

(2) that she suffered an adverse action;

(3) that she was qualified for the position; and

(4) that she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class.

Hoskins, 227 F.3d at 731 (citing Warfield v. Lebanon Correctional Inst., 181 F.3d 723, 728–29 (6th Cir.1999)). An inference of discrimination arises if the Plaintiff establishes her prima facie case. See id. Then, "the burden of production shifts to the employer, who must set forth a legitimate, non-discriminatory reason for the plaintiff's discharge." Id. If the employer produces evidence of a legitimate, non-discriminatory reason for taking the adverse employment action, the Plaintiff may show that reason to be pretextual. See id. To do so, "the plaintiff must prove 'that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision,

also applies to her claims for sex discrimination under R.C. § 4112.02. See note 3, supra.

that they were jointly insufficient to motivate the discharge.' " *Id.*

■ Aside from the qualification issue, which the Court has already discussed at length, the primary issue raised by GM and the UAW with respect to the Plaintiff's sex discrimination claim is whether the Plaintiff has established that similarly situated male employees received different treatment than the Plaintiff.[14] In order for a member of a protected class to show that she is similarly situated with members of an unprotected class, "[a] plaintiff 'need not demonstrate an exact correlation with the employee receiving more favorable treatment . . .'; however, the plaintiff and the comparable must be similar in all relevant aspects." *Hoskins*, 227 F.3d at 732 (*citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). In *Hoskins*, the Sixth Circuit held that the Plaintiff's sex discrimination claim was properly dismissed because "Hoskins [had] not shown that [the accommodated men] were comparable to her in all relevant aspects." *Id.* The plaintiff argued that eleven male employees were disabled and unable to perform essential functions of their job, yet were accommodated temporarily by their employer while subject to medical restrictions. *See id.* The court reasoned that despite this argument, the plaintiff, in her deposition, failed to identify any male employees who were subject to *permanent* medical restrictions, like the plaintiff, and were permitted to return to work with an accommodation. *See id.*

■ In the case *sub judice*, the Plaintiff has failed to demonstrate that she is similarly situated to any male employee who was treated differently by GM or the UAW. In her deposition, the Plaintiff did not identify any male employees who had comparable physical limitations and seniority status. Rather, she provided the names of five men whom she believed were treated more favorably than her. The Plaintiff, however, had no knowledge of the nature of the medical restrictions or physical limitations of these men, or their seniority status. (Lockard Dep. at 394–97.) In short, the Plaintiff has no evidence that any comparable male employee was treated more favorably than she was, and, therefore, cannot establish a prima facie case of sex discrimination under Title VII and R.C. § 4112.02.[15] Summary judgment is therefore appropriately granted in favor of the Defendants.

### CONCLUSION

For the foregoing reasons, the Court finds that GM is entitled to summary judgment on Counts I, II & III of the Plaintiff's Complaint. Furthermore, the UAW is entitled to summary judgment on Counts V, VI, VII, and VII.

Accordingly, the respective Motions for Summary Judgment of GM and the UAW (ECF–Dkt. # 40 & # 47) are hereby **GRANTED.**

**IT IS SO ORDERED.**

---

**14.** The Court has already found that the Plaintiff has not provided any evidence that she was qualified by her seniority for any available position at the Assembly Plant which was also consistent with her medical restrictions. Thus, the Plaintiff has failed to establish the third element of a prima facie case of sex discrimination. Nonetheless, the Court will discuss the "similarly situated" issue.

**15.** *See* note 6, *supra.* The same reasoning applies with respect to the statements made in the Goricki and Clay Affidavits concerning the Plaintiff's sex discrimination claim.