**Gregory R. SWITALA, Plaintiff,**

v.

**SCHWAN'S SALES ENTERPRISE, et al., Defendants.**

No. 3:01CV 7218.

United States District Court, N.D. Ohio, Western Division.

Oct. 22, 2002.

Harland M. Britz, Britz & Zemmalman, Toledo, OH, for Gregory R. Switala.

Jonathan T. Hyman, Maria C. Ciano, Reminger & Reminger, Cleveland, OH, for Schwan's Sales Enterprise.

## ORDER

CARR, District Judge.

Plaintiff Gregory R. Switala brings this suit against defendant Schwan's Sales Enterprise ("Schwan's") claiming disability discrimination and retaliatory termination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Plaintiff also brings this suit against defendant Paul Dodge claiming disability discrimination in violation of Ohio Revised Code § 4112.01 *et seq.* This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion shall be granted in part and denied in part.

## BACKGROUND

Schwan's delivers frozen foods to customers' homes. Schwan's route managers drive delivery trucks on sales routes. In 1988, Schwan's hired Gregory R. Switala as a route manager in Clio, Michigan.

In January, 1998, Schwan's promoted plaintiff to the position of sales manager trainee at Schwan's Lima East depot in Lima, Ohio. On December 15, 1998, Schwan's division manager Paul Dodge promoted plaintiff to sales manager of the Lima East depot. Dodge was plaintiff's immediate supervisor after the promotion. As a Schwan's sales manager, plaintiff's duties included riding along with trainees on delivery routes.

In late summer or early fall, 1999, plaintiff began experiencing pain in his shoulders and back. On September 13, 1999, plaintiff visited Dr. Laura Waldron. During that visit, plaintiff certified a workers' compensation claim for himself for back and shoulder injuries. His self-certification contravened Schwan's policy that su-

pervisors were to certify employees' claims.

The doctor prescribed physical therapy for plaintiff, beginning September 15, 1999, and continuing three times per week until September 28, 1999, when plaintiff was scheduled to visit Dr. William Sanko. Dr. Waldron also issued plaintiff physical restrictions, recommending no overhead work until September 28, 1999.

On September 15, 1999, Dodge asked plaintiff to ride along with a trainee on a delivery route. Plaintiff told Dodge he could not train the employee because he had an appointment for a physical therapy evaluation. Plaintiff did not show Dodge the physical therapy prescription, the physical restrictions, or the workers' compensation claim.

Dodge asserts that though he initially told plaintiff that he could not attend his appointment, he reconsidered, and 10 or 15 minutes later, he told plaintiff he could attend physical therapy. Dodge asserts that he also told plaintiff that the new employee could not drive the route alone, so plaintiff would have to train him by riding along with him later. According to Dodge, plaintiff chose to cancel his appointment and ride along with the trainee.

Plaintiff contends that when he told Dodge about his therapy appointment, Dodge told him not to attend therapy and to ride along with the trainee. Plaintiff alleges either Dodge or another employee could have ridden along with the trainee. Plaintiff also alleges he told Dodge about his physical restrictions, though he says he may not have been specific, and told him that he had a prescription to begin therapy that day. Plaintiff admits he did not show Dodge the documents.

Plaintiff alleges that he faxed his work restrictions and therapy prescription to Schwan's Risk Services Department in Marshall, Minnesota, giving notice to that department of his injury and physical ther-

apy appointments on September 16, 1999. Schwan's first received notice of the Ohio Bureau of Workers' Compensation's approval of physical therapy on November 1, 1999. Schwan's received a physician's certification outlining plaintiff's restrictions and treatment on November 28, 1999, and Dodge first saw the documents on November 29, 1999. Plaintiff began attending physical therapy in November, 1999.

On December 6, 1999, Dr. Sanko issued plaintiff further physical restrictions: "no driving in truck[,] no lifting over head[,] no lifting over 20 [pounds]." (Def.Ex. 8).

On January 5, 2000, Dodge and Schwan's Risk Services Department assigned plaintiff to light duty. Def. Ex. 9. On January 17, 2000, defendants renewed plaintiff's light duty status. On January 30, 2000, plaintiff took a formal leave of absence from Schwan's.

Schwan's allows employees six months of medical leave. It may extend the leave to nine months or twelve months. Schwan's terminates employees who cannot return to work after one year of leave. Schwan's extended plaintiff's leave to nine months and then to twelve months.

On September 26, 2000, while on medical leave, plaintiff filed a charge of disability discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). He alleged that "[o]n September 15, 1999, the company refused to let me attend physical therapy three times a week. My disability became more severe, therefore the company allowed me to attend physical therapy in November 1999." (Def.Ex. 18).

In October and November, 2000, doctors performed surgery on plaintiff's shoulders.

On January 3, 2001, Schwan's senior workers' compensation specialist Chari Hamilton sent plaintiff a letter stating his

medical leave would expire on January 29, 2001, and he would be terminated if he could not return to work on that date.

On January 16, 2001, Dr. Kurt Kuhlman released plaintiff "to a temporary work assignment (light duty)" beginning January 22, 2001. The release recommended that plaintiff work six-hour days for three weeks, seven-hour days for three weeks, and then eight-hour days. The release provided plaintiff could not drive a delivery truck or lift more than 20 pounds, and issued permanent restrictions on repetitive overhead lifting and repetitive bending. (Def.Ex. 14).

Hamilton received plaintiff's work release and compared the work restrictions to plaintiff's job description. She concluded plaintiff could not return to his job as sales manager, finding that Schwan's "will not be able to accommodate [plaintiff] with the restrictions as described by Dr. Kuhlman." (Def.Ex. 15).

After Hamilton concluded plaintiff could not return to his job as sales manager, she called Dodge to discuss plaintiff's employment. They assert that they could not find any open positions that matched plaintiff's qualifications and physical restrictions. On January 30, 2001, Hamilton sent plaintiff a letter terminating him effective January 29, 2001, because his leave of absence had expired.

The EEOC issued plaintiff a right-to-sue letter on Feb. 6, 2001. Plaintiff filed this case on May 3, 2001. Defendant has filed a motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

Plaintiff alleges Schwan's and Dodge failed reasonably to accommodate him by keeping him from physical therapy on September 15, 1999, and thereafter. This claim against Schwan's is based on the Americans with Disabilities Act ("ADA"), and this claim against Dodge is based on the corresponding sections of the Ohio Revised Code. Plaintiff also alleges Schwan's failed reasonably to accommodate him by terminating him when his leave of absence expired, in violation of the ADA. Finally, plaintiff alleges Schwan's terminated him in retaliation for filing a charge with the EEOC. I consider these allegations in turn.

## I. Claims for Failure to Accommodate

The ADA requires employers to provide reasonable accommodations to otherwise qualified disabled employees. 42 U.S.C. § 12112(b)(5)(A). I find that the issues of whether plaintiff was disabled and was otherwise qualified are questions for the jury to decide, because material facts are either undeveloped or in dispute.

The ADA, at 42 U.S.C. § 12112(a), provides, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

A "covered entity" is "an employer." 42 U.S.C. § 12111(2).

The term "discriminate" is defined as:

(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodations to the physical or mental impairments of the employee or applicant.

42 U.S.C. §§ 12112(b)(5)(A)-(B).

The ADA defines a disability, with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A)-(C). Plaintiff argues he is disabled under all three definitions.

A physical impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss" affecting any one of several body systems, including the musculoskeletal system. 29 C.F.R. § 1630.2(h)(1).

An impairment that substantially limits an individual is one that causes him or her to be "[s]ignificantly restricted as to the condition, manner or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

Three factors are to be considered in determining whether plaintiff is substantially limited in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

"Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

learning, and working. 29 C.F.R. § 1630.2(i). The corresponding interpretive guidelines state that this list is not exhaustive and that other major life activities include, but are not limited to, sitting, standing, lifting, and reaching. 29 C.F.R. Pt. 1630.2(i) App. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).

A "reasonable accommodation" can include job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, and other similar accommodations for individuals with disabilities. 42 U.S.C. §§ 12111(9)(B).

Undue hardship is an action requiring significant difficulty or expense, when considered in light of:

(i) the nature and cost of the accommodation needed under this Act; (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of such entity; the geographical separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B).

## A. Whether Plaintiff was Disabled

██ Plaintiff argues he is disabled because he is substantially limited in performing manual tasks.

With regard to whether a condition substantially limits one's ability to perform manual tasks, the Supreme Court stated in *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002), that:

to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term.

In *Williams*, plaintiff had carpal tunnel syndrome and sought to be classified as disabled because of an inability to perform manual tasks. Her job required her to work with her hands at or above shoulder level. 122 S.Ct. at 687. She could bathe, garden, cook, do laundry, and straighten her house. She could not sweep or dance, and occasionally needed help dressing. She reduced the amount of time she drove, gardened, and played with her children. 122 S.Ct. at 694.

The Supreme Court held she was not disabled in performing manual tasks, finding that "these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual-task disability as a matter of law." 122 S.Ct. at 694.

According to the Court, "household chores, bathing, and brushing one's teeth" are among the types of manual tasks that are of central importance to daily life. 122 S.Ct. at 693. Conversely, the Court found that plaintiff's job, which involved "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time," did not involve tasks of importance in most people's daily lives. 122 S.Ct. at 693.

■ As the Supreme Court stated in *Williams:*

> When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.... [T]he manual tasks unique to any particular job are not necessarily important parts of most people's lives.

122 S.Ct. at 693.

The Court stated in *Williams* that "Congress intended the existence of a disability to be determined in ... a case-by-case manner." 122 S.Ct. at 692. The Court pointed out that:

> [i]t is insufficient for individuals attempting to prove disability status under this test [for performing manual tasks] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.

122 S.Ct. at 691–92 (citation omitted).

■ Under *Williams,* I must consider whether plaintiff's impairments, together or separately, prevent or severely restrict him from activities that are of central importance to daily life, taking into account the permanency or long-term impact of the impairments.

Plaintiff has been diagnosed with degenerative disc disease throughout his spine, left foraminal stenosis in his cervical spine, thoracic disc herniation, and anterior lumbar disc protrusion accompanied by fecal sac effacement in several locations throughout his spine. Plaintiff was restricted from reaching overhead on or about September, 1999, but this restriction was lifted in fall or winter 2000, after his shoulder surgeries. He now can reach overhead "with much less difficulty than before." (Pl. Depo. at 21).

Plaintiff is permanently restricted from repetitive overhead lifting and repetitive bending, and he also still is restricted from lifting more than 20 pounds and driving commercial vehicles.

Plaintiff's restrictions do not prevent him from all physical activity. He performs "light exercise and stretching," and has practiced tai chi, a Chinese "relaxing exercise," since 1997. Plaintiff's hobbies include tying fishing flies, home-brewing beer, and reading. He performs "light household chores," including washing dishes and dusting. (Pl. Depo. at 14–15). Plaintiff operates his pickup truck.

Plaintiff occasionally has lifted items weighing more than 20 pounds. He has performed tasks such as installing window air conditioners with his wife or son, though he adds such tasks are "few and far between" and "typically followed up with traction and rest." (Pl. Depo. at 22).

Plaintiff reports, however, that his condition prevents him from bending sideways, performing heavy or repeated lifting, sitting upright for extended periods of time, bending forward over a desk to read or write, and, occasionally, from walking and driving.

More specifically, plaintiff alleges he cannot string Christmas lights, wash windows, change the oil in his automobile, perform brake work, engine work, or tire work on his automobile, cut or split wood, move furniture, mow or trim his lawn, shovel snow, garden, play racquetball, golf, baseball, softball, football, basketball, pool, or billiards, go bowling, swim, use a NordicTrack machine, engage in sexual activity without discomfort, or sit in a movie theater for an entire movie without dis-

comfort. He also alleges some difficulty sleeping.

Defendant has not controverted these allegations, which, when viewed in light of this medical evidence and treatment, could raise a genuine issue about the impact of plaintiff's impairment on his ability to perform activities of major importance in his daily life.

Turning to the permanency or long-term impact of the impairments, I find that plaintiff's impairments are permanent. His work release permanently restricted him from repetitive overhead lifting and bending. He reached "maximum medical improvement" status, as defined by the Bureau of Workers' Compensation, on March 27, 2001.

The permanency of plaintiff's restrictions, combined with the relative severity of plaintiff's impairments, creates a genuine issue of fact for the jury as to whether plaintiff is substantially limited in the major life activity of performing manual tasks.

### B. Whether Plaintiff was Otherwise Qualified

■ Assuming plaintiff was disabled, plaintiff must prove he is a qualified individual with a disability to recover under the ADA.

A "qualified individual with a disability" is:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this de-

scription shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

■ The relevant time for determining whether the plaintiff is a qualified individual with a disability is January 29, 2001, the date of plaintiff's discharge. *See Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 884 (6th Cir.1996).

The term "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2).

When considering what job functions are essential, courts consider the: 1) employer's judgment as to which functions are essential; 2) written job descriptions prepared before advertising or interviewing applicants for the job; 3) amount of time on the job performing the function; 4) consequences of not requiring the incumbent to perform the function; 5) terms of a collective bargaining agreement; 6) work experience of past incumbents in the job; and/or 7) current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).

■ The inquiry into whether a function is essential should be based upon more than statements in a job description. What matters are the actual functioning and circumstances of the particular enterprise involved. *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1079 (6th Cir. 1988); *see also Hoskins v. Oakland County Sheriff's Dep't,* 227 F.3d 719, 726 (6th Cir.2000).

Plaintiff and Schwan's dispute whether the essential functions of the sales manager position included driving, loading, and unloading delivery trucks. Plaintiff's deposition and medical documentation show he could not perform these elements on January 29, 2001. He contends, however, that he was able to perform the essential duties of his managerial position. Schwan's argues that the elements were essential, and, because plaintiff could not perform them with or without reasonable accommodation, he was not otherwise qualified. Schwan's has the burden of demonstrating that these tasks constituted essential functions. *Hoskins,* 227 F.3d at 726.

Schwan's job description for the sales manager position includes the requirement: "Periodically required to run and operate route trucks, regularly required to train salespeople on a route truck, and occasionally required to assist in loading and unloading of trucks from the warehouse freezer." (Def.Ex. 1, p. 1, ¶ 13). This item was the last on the list of requirements, which also included twelve managerial duties: hiring and training employees, conducting weekly meetings, increasing sales and profits, updating route maps and books, enforcing company rules, meeting company goals, and promoting marketing programs, and being responsible for bookkeeping, cost controls, safety, company assets, and affirmative action programs. (Id. at ¶¶ 1–12).

The job description also states:

> While performing the duties of this job, the employee is frequently required to: operate the hand and foot controls of a truck; sit, stand, and walk; climb 1 or 2 trucks [sic] steps (maximum step height 16 inches), balance, bend/stoop, reach (maximum vertical distance from supporting surface of 6 feet, maximum hori-zontal distance of 42 inches), grasp and manipulate/move (push/pull or lift) objects of 5 pounds or less, and carry up to 10 pounds for a variable distance of 100 feet or less, and manipulate a hand-held computer. The employee may occasionally lift and carry up to 30 pounds for a variable distance of 100 feet or less.... Employee must be able to meet U.S. Department of Transportation's requirements of Medical Certification.

*Id.* at 2.

The job description further provides that a sales manager must have:

> [p]ossession and maintenance of a valid commercial driver's license according to the regulations prescribed by the federal DOT and the employee's state of residence. Must have a valid medical certification according to the regulations prescribed by the federal DOT.... Must be able to successfully meet all requirements outlined for federal DOT qualification, to include passage of a physical examination ...

*Id.*

Schwan's job description does not automatically establish that the disputed functions are essential. Rather, the actual functioning of the job must be examined. I first will examine the contested function of driving a delivery truck.

Though plaintiff does not have any legal restrictions on his driver's license, plaintiff's doctor has barred him from driving commercial vehicles because the task required him to climb, reach, and use his feet to operate the manual transmission. The limit is not permanent, but it was in place as of the date of plaintiff's termination. Schwan's argues the medical restriction means that plaintiff cannot hold a commercial driver's license under Department of Transportation regulations.[1] This is un-

---

1. Federal Department of Transportation regulations provide that "a person is physically qualified to drive a commercial motor vehicle if that person ... has no ... clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which in-

clear from the record, and is, in any case, immaterial. The issue is whether Schwan's can prove that driving a truck and possessing a commercial driver's license actually are essential elements of the sales manager job.

Plaintiff argues that he was not required to drive the delivery trucks when he trained new employees, and that the trainees could drive the trucks. Dodge concedes that it was not necessary for sales managers to drive when they accompanied trainees on routes. Plaintiff concludes there was no real-world requirement that plaintiff needed to possess a commercial driver's license. In response, Schwan's argues that sales managers are routinely expected to fill in and drive routes as needed.

Schwan's has not presented evidence of how frequently sales managers were required to drive trucks. The company job description indicates this task is "periodic." Plaintiff's deposition also indicates only that plaintiff "periodically" drove a delivery truck. (Pl.Depo., p. 196–97). The record on this issue in undeveloped, and Schwan's has not shown that it is entitled to summary judgment on this issue.

Turning to the contested functions of loading and unloading the trucks, plaintiff acknowledges he could not perform this function, because of his repetitive lifting and bending restrictions. Schwan's has not presented evidence of how frequently sales managers were required to load and unload trucks, but the company job description indicates that sales managers "occasionally" may do so. (Def.Ex. 1, p. 1, ¶ 13). According to plaintiff's deposition, plaintiff had performed repetitive overhead lifting and repetitive bending as a sales manager. (Pl.Depo., p. 196–97). This testimony does not indicate, however, that these functions were essential. Here, again, the record is insufficiently developed.

The amount of time on the job that plaintiff spent performing the contested functions was, apparently, slight. Additionally, though there was only one other sales manager working at the Lima East depot, there also were sixteen drivers working there. A jury could find that others could have performed the physically demanding aspects of plaintiff's job, which would lessen the consequences of not requiring plaintiff to perform the functions. *See* 29 C.F.R. §§ 1630.2(n)(2)-(3).

■ Job restructuring is one type of reasonable accommodation. Plaintiff has proposed the duties of his job as sales manager could have been modified to allow him to perform his job within his physical restrictions. A jury could find that plaintiff's proposal is reasonable, because it is reasonable to modify marginal elements of the job. *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632 (6th Cir.1999) ("[J]ob restructuring" within the meaning of the ADA only pertains to non-essential duties or marginal functions of a job); *see also Hoskins*, 227 F.3d at 729 ("the ADA does not require employers to accommodate individuals by shifting an essential job function onto others").

■ If a disabled employee cannot perform the essential functions of his or her job with or without reasonable accommodation, the employer is required to consider reassigning the employee to a vacant position. *Bratten*, 185 F.3d at 633–34. If a plaintiff can be reassigned, he or she is a qualified individual with a disability under the ADA. Plaintiff alleges Schwan's could have reassigned him to a position "[s]uch

terferes with his ability to control and operate a commercial motor vehicle safely." 49 C.F.R. § 391.41(b)(7).

as training, such as recruiting, such as working in the marketing department." (Pl. Depo. at 177).

 It is plaintiff's burden, however, to show such positions existed and were empty when he was terminated. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996). Merely alleging "[Schwan's] must have had some equivalent position for Plaintiff to fill" is not sufficient. (Doc. 35, p. 9).

Here, Hamilton asked Dodge "if he had any open available positions for Greg [Switala].... any job at all." (Hamilton Depo. at 21). Schwan's concluded there were no such jobs, and plaintiff has not placed this contention in dispute by producing evidence to the contrary. Still, I find the jury is entitled to consider whether Schwan's fulfilled its duty to attempt reassignment.

 Plaintiff attempts to argue that another factor under 29 C.F.R. § 1630.2(n)(3), current work experience of incumbents in similar jobs, points to the conclusion that the challenged functions were not essential. In his affidavit, plaintiff argues that he knows some Schwan's sales managers who rarely, if ever, drive delivery trucks, ride in the trucks with trainees, or load or unload trucks. This testimony is not based on personal knowledge. A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact. *Weberg v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000). Plaintiff's allegations in his affidavit about what other sales managers told him must, therefore, be disregarded.

The existence, or lack thereof, of a vacancy is not, however, determinative. Based on the record presently before this court, a jury could find that those things plaintiff could not do were not essential for plaintiff's performance of his job, and that

Schwan's failed to take reasonable steps to accommodate him.

**C. Failure to Accommodate Physical Therapy Sessions**

 Plaintiff's claims that Schwan's and Dodge failed reasonably to accommodate his alleged disability by forbidding him from attending physical therapy are based, respectively, in federal and Ohio statues. The Ohio Supreme Court has ruled that courts can analyze Ohio disability law with guidance from the ADA. *City of Columbus Civ. Service Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998) ("The federal Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law.... We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law"). Because resolution of Plaintiff's ADA claim relating to his physical therapy sessions also disposes of his claim under Ohio law, I will analyze these claims against Schwan's and Dodge together using the ADA.

 To defeat a defendant employer's motion for summary judgment, plaintiff employee must show his requested accommodation is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S.Ct. 1516, 1523, 152 L.Ed.2d 589 (2002); *see Monette*, 90 F.3d at 1183 (plaintiff bears initial burden of proposing accommodation and establishing it is objectively reasonable). If the plaintiff cannot make this showing, the defendant is entitled to judgment as a matter of law. 122 S.Ct. at 1523. If the plaintiff can show his requested accommodation was objectively reasonable, the defendant still is entitled to summary judgment if it can show accommodating plaintiff's request would cause it to suffer an undue hardship. 122 S.Ct. at 1523; *see Monette*, 90 F.3d at 1183–84.

In this case, plaintiff seeks to establish his request to attend physical therapy on September 15, 1999, though he provided no notice or documentation to his employer or supervisor, was reasonable on its face.

The Sixth Circuit ruled in *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094–95 (6th Cir.1998), that employers are entitled to such documentation before granting medical leave:

> [T]he employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting a special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists.

Indeed, the Family and Medical Leave Act, 29 U.S.C. §§ 2611 *et seq.*, provides an employee who foreseeably will leave work because of planned medical treatment must provide the employer with at least thirty days' notice, or "such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). Schwan's FMLA policy provides: "Medical certification to support a request for leave because of a serious health condition may be required.... Taking of leave may be denied if requirements are not met." (Def.Ex. 10, § 316.10).

On September 13, 1999, plaintiff scheduled treatment to begin on September 15, 1999. He had two days to tell Dodge or Schwan's. Dodge, in fact, visited the Lima, Ohio, depot on September 14, 1999, but plaintiff did not mention the therapy. The parties agree plaintiff did not show his therapy prescription and work restrictions to Dodge on September 15, 1999, when plaintiff asked Dodge for time off. Plaintiff said he told Dodge about the documents, and Dodge did not ask to see them.

Because plaintiff did not offer proof to Dodge or Schwan's that he had a doctor's appointment on September 15, 1999, his requested accommodation was not reasonable. Plaintiff was not entitled simply to walk off the job without any prior warning or notice to Schwan's.

Even if plaintiff's requested accommodation was reasonable on its face, it would have imposed an undue hardship. Factors leading to undue hardship can include, as noted, the number of people employed at a facility and the impact of the accommodation on the facility. 42 U.S.C. § 12111(10)(B).

Plaintiff claims either Dodge or management trainee Mark Cornwell could have ridden along with the trainee while plaintiff attended physical therapy.

There is no dispute that the delivery route needed to be driven on September 15, 1999. Accommodating plaintiff would have meant either not completing the route, sending an inexperienced driver on the route alone, or forcing either of the two available alternate supervisors to accommodate the trainee. Dodge was the division manager, supervising eight sales companies in six Ohio cities, and it would have been manifestly unreasonable for plaintiff to force his supervisor to assume his own duties without prior warning. Cornwell, as a management trainee, did not have plaintiff's qualifications. Plaintiff suggests that the trainee could have been sent on the route unsupervised, but this would have worked an undue hardship. Schwan's cannot be asked to send untrained drivers on its routes to accommodate undocumented requests for leave.

I find plaintiff's last-minute request for leave was unreasonable, and accommodating it on September 15, 1999, would have worked an undue hardship on defendants.

■ As for the subsequent physical therapy sessions, though plaintiff alleges defendants prevented him from attending physical therapy until November, 1999, plaintiff has not alleged he asked defendants' permission to attend physical therapy at any time after September 15, 1999. Plaintiff attended his September 28, 1999 appointment with Dr. Sanko. Plaintiff apparently also attended a doctor's appointment on October 25, 1999, and was restricted to "light duty for [two weeks]. Back pain" (Def.Ex. 6). Plaintiff does not present evidence that defendant ignored the light duty restriction. Plaintiff also has not rebutted Schwan's argument that it received the workers' compensation recommendation of physical therapy on November 1, 1999, and the physician's certification outlining plaintiff's restrictions and treatment on November 28, 1999. Plaintiff has not rebutted Dodge's argument that he did not see any certification until November 29, 1999.

Because defendants were entitled to such certification before permitting plaintiff to attend the appointments, defendants are entitled to summary judgment on the plaintiff's Ohio Revised Code and ADA claims relating to the September 15, 1999 appointment and subsequent appointments.

## D. Failure to Accommodate by Terminating Plaintiff

Plaintiff's next claim is that Schwan's failed reasonably to accommodate him by terminating him when his one-year leave of absence expired, in violation of the ADA.

■ In the Sixth Circuit, a plaintiff seeking relief under the ADA for termination must establish he or she: 1) is an individual with a disability; 2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) was discharged solely by reason of his or her handicap. *Monette*, 90 F.3d at 1178.

*Monette* clarified the burdens each party assumes, based on whether the plaintiff uses direct evidence or indirect evidence to support his or her claim.

■ Direct evidence of employment discrimination exists when an employer admits, or the evidence establishes, that its decision was based upon the employee's disability. 90 F.3d at 1180. Where the plaintiff presents direct evidence, he or she bears the burden of establishing: 1) he or she is disabled; and 2) he or she is otherwise qualified for the position despite the disability, a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation. The employer then bears the burden of proving that a challenged job criterion is essential and a business necessity, or that the proposed accommodation would impose an undue hardship. 90 F.3d at 1186.

■ If the plaintiff does not have direct evidence, the plaintiff may seek to establish a prima facie case of discrimination using the indirect evidence standard, which uses the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This standard requires plaintiff to show: 1) he or she is disabled; 2) he or she is otherwise qualified for the position; 3) he or she suffered an adverse employment decision; 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination the position remained open, or the disabled individual was replaced. *Monette*, 90 F.3d at 1185. The fifth element also may be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Hopkins v. Elec. Data Sys. Corp.,* 196 F.3d 655, 660 (6th Cir.1999).

If the plaintiff proves these five factors, he creates a mandatory inference that the employer intentionally discriminated based on handicap. *Monette*, 90 F.3d at 1185. The employer then has a burden of producing a legitimate reason for its action, unrelated to the employee's disability. 90 F.3d at 1185–86. If the employer meets that burden of production, the burden of persuasion shifts back to the plaintiff, who must show that employer's proffered reason is a pretext for unlawful discrimination. 90 F.3d at 1186. At all times, plaintiff retains the ultimate burden of persuasion. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000).

In this case, it is not clear whether plaintiff's termination claim is based on direct or indirect evidence. Defendant argues it terminated plaintiff because plaintiff did not return to work after his medical leave expired, and because defendant could not place plaintiff in any vacant position that reasonably would have accommodated his physical restrictions. Plaintiff argues that reasonable accommodations would have allowed him to return to his job as sales manager, and the defendant did not provide these accommodations.

Regardless of whether the direct or indirect evidence standard is used, plaintiff must prove he is disabled and that he was otherwise qualified for the job, with or without reasonable accommodations. I have found that plaintiff has created jury issues as to both of these questions.

■ Under the direct evidence standard, if plaintiff has proven he was disabled and otherwise qualified with the alleged "essential" elements removed, Schwan's must prove the challenged job criteria, the abilities to drive, load, and unload a truck, are essential and business necessities. This is a question for the jury as well. Plaintiff, therefore, has created a jury issue as to whether Schwan's termi-nated him in violation of the ADA under the direct evidence standard.

■ Under the indirect evidence standard, as noted, plaintiff also must prove he was disabled and otherwise qualified.

Plaintiff also must prove he was subject to an adverse employment decision. Termination is an adverse employment decision.

He must prove defendant knew of his disability; plaintiff has produced evidence that Schwan's received his work release documents.

Finally, plaintiff must provide evidence that after termination the position remained open, or that he was replaced, or that similarly situated non-protected employees were treated more favorably. The record indicates that management trainee Mark Cornwell was promoted to replace plaintiff.

■ Thus, plaintiff has created a jury issue as to whether he has a prima facie case that Schwan's terminated him in violation of the ADA, under the indirect evidence standard. If plaintiff has in fact created this prima facie case, Schwan's has met its burden of producing a legitimate reason for terminating the plaintiff: the expiration of plaintiff's medical leave. Whether plaintiff has presented evidence to show the asserted reason was pretextual is a question for the jury, one related to plaintiff's retaliatory termination claim, which I now address.

## II. Retaliatory Termination

Plaintiff's final claim is that Schwan's terminated him in retaliation for filing a charge with the EEOC on September 26, 2000.

The ADA's anti-retaliation section prohibits an employer from discriminating against anyone who "has opposed any act

or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

■ To show a prima facie case of retaliation, plaintiff must prove: 1) he engaged in a protected activity; 2) the exercise of his civil rights was known by the defendant; 3) he thereafter suffered an adverse employment action; and 4) a causal connection existed between the protected activity and the adverse action. *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588–89 (6th Cir.1998).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving the proffered reason was merely a pretext for discrimination. *Penny*, 128 F.3d at 417.

■ Plaintiff has established the first three elements of the prima facie test. Filing the charge with the EEOC on September 26, 2000, was a protected activity. Schwan's learned of this charge when Dodge received a copy of it. The plaintiff's termination on January 29, 2001, was an adverse employment action. Schwan's does not dispute the first three elements.

■ A plaintiff proves the fourth element of his or her prima facie case, the causal connection between the protected activity and the adverse action, by producing evidence sufficient to raise the inference that his or her protected activity was the likely reason for the adverse action. *Walborn*, 150 F.3d at 589; *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir.2000) ("[P]laintiff [must] put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court

to draw reasonable inferences from that evidence, providing it is credible"); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997) (same).

■ The causal connection is strengthened if the defendant's retaliatory action occurred soon after the plaintiff's protected activity. *Smith v. Ameritech*, 129 F.3d 857, 865–66 (6th Cir.1997).

The Sixth Circuit, however, has stated that in retaliation cases, temporal proximity alone is insufficient to establish plaintiff's prima facie case. *Harrison v. Metropolitan Government of Nashville*, 80 F.3d 1107, 1119 (finding causal connection when temporal proximity considered in conjunction with other evidence of retaliatory conduct); *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir.1999) (same); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) ("[t]he mere fact that [employee] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation"); *see also Walborn*, 150 F.3d at 589 (citing *Cooper* for this proposition).

In this case, plaintiff filed his EEOC charge in September, 2000, while on disability leave, and was terminated four months later, in January, 2001, when his leave expired. Defendant urges this Court to follow *Cooper* and conclude that a four-month lapse between protected activity and termination, without more evidence, does not establish retaliation. *See also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999) (adverse employment action two to five months after protected activity, without more evidence, does not establish retaliation).

Plaintiff, however, notes that he informed Schwan's he wished to return to work by forwarding his workers' compensation release of January 16, 2001, less than two weeks before he was fired. A jury could find that such a short lapse of

time creates an inference of retaliatory animus and motivation that led to plaintiff's discharge. If so, it could also find that Schwan's stated reason—expiration of plaintiff's leave—was pretextual.

### CONCLUSION

A jury could find that plaintiff was disabled. It could also find that driving a truck and lifting were not essential elements of plaintiff's job, and that those tasks could have been handled by other employees with reasonable accommodation. Failing to make such accommodation and firing plaintiff shortly after he expressed a desire to return to work could be found to have resulted from an intent to discriminate or retaliate. Thus, plaintiff's claims against Schwan's for discriminatory termination and retaliatory termination present issues for the jury. Plaintiff's claims against Dodge and Schwan's for discriminatory treatment with regard to his physical therapy sessions do not, however, raise any genuine issue of material fact.

It is, therefore,

ORDERED THAT

1. Defendants' motion for summary judgment shall be, and hereby is, denied as to plaintiff's ADA claims against Schwan's; and

2. Defendants' motion for summary judgment shall be, and hereby is, granted as to plaintiff's ADA and Ohio Revised Code claims against Schwan's and Dodge based on the alleged failure to allow plaintiff to attend physical therapy.

**So ordered.**